IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| JESSIE J. SMITH, | ) | CIVIL ACTION NO. 9:09-0351-SB-BM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein he was denied disability benefits. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

Plaintiff applied for Supplemental Security Income (SSI) on February 27, 2007,[1] alleging disability due to mental health issues and various physical ailments, including Hepatitis C. Plaintiff's claim was denied initially and upon reconsideration. Plaintiff then requested a hearing

---

[1] Under SSI, the claimant's entitlement to benefits (assuming they establish disability) begins the month following the date of filing the application forward. Pariseau v. Astrue, No. 07-268, 2008 WL 2414851, * 13 (D.R.I. June 13, 2008). Although the definition of disability is the same for both Disability Insurance Benefits (DIB) and SSI; Emberlin v. Astrue, No. 06-4136, 2008 WL 565185, at * 1 n. 3 (D.S.D. Feb. 29, 2008); "[a]n applicant who cannot establish that she was disabled during the insured period for DIB may still receive SSI benefits if she can establish that she is disabled and has limited means." Sienkiewicz v. Barnhart, No. 04-1542, 2005 WL 83841, at ** 3 (7th Cir. Jan. 6, 2005). See also Splude v. Apfel, 165 F.3d 85, 87 (1st Cir. 1999)[Discussing the difference between DIB and SSI benefits].



before an Administrative Law Judge (ALJ), which was held on July 1, 2008. (R.pp. 27-57). The ALJ thereafter denied Plaintiff's claim in a decision issued July 16, 2008. (R.pp. 10-22). The Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 3-5).

The Plaintiff then filed this action in United States District Court. Plaintiff asserts that there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for an award of benefits. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that the Plaintiff was properly found not to be disabled.

### Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)). The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642.



"[T]he language of [405(g)] precludes a de novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by substantial evidence." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

### Discussion

A review of the record shows that Plaintiff, who was fifty-four (54) years old at the time of the decision, has a seventh grade education with no past relevant work experience since February 2007.[2] (R. pp. 32, 106, 111, 131, 136). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that he has an impairment or combination of impairments which prevent him from engaging in all substantial gainful activity for which he is qualified by his age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months.

After review of the evidence and testimony in the case, the ALJ determined that, although Plaintiff does suffer from several severe impairments[3] (schizophrenia/bipolar disorder, decreased visual acuity, Hepatitis C, leg pain associated with residuals of burn injuries, history of alcohol and crack cocaine abuse, and an anti-social personality disorder), he nevertheless retained the residual functional capacity (RFC) to perform a limited range of light work[4], and was therefore not

---

[2]The decision reflects that Plaintiff had filed several previous applications for supplemental security income, and was receiving supplemental security income which was terminated during a twenty-one (21) month prison term for burglary, grand larceny, and assaulting an officer. Plaintiff was not eligible for supplemental security income prior to his release from prison in February 2007, which is when he filed his current application for supplemental security income. (R.pp. 10, 12).

[3]An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1521(a); Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987).

[4]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying
(continued...)



disabled. (R. pp. 12, 14, 21). Plaintiff asserts that in reaching this decision, the ALJ erred by failing to adequately consider the opinion of Plaintiff's treating psychiatrist, Dr. Bo Brown, and argues that Plaintiff is unable to work "because of mental illness resulting in a long history of impulsive, unpredictable, and destructive behavior." Plaintiff's Brief, p. 2. However, after careful review and consideration of the arguments and evidence presented, the Court finds that there is substantial evidence in the record to support the conclusion of the ALJ that Plaintiff was not disabled as that term is defined in the Social Security Act during the relevant time period, and that the decision should therefore be affirmed.

The medical evidence from the relevant time period shows that, following his release from prison in February 2007, Plaintiff resumed his drug habit, in particular the use of crack cocaine[5], resulting in his admission to a drug treatment center in July 2007. (R.pp. 218-220). Plaintiff remained in this facility for approximately six weeks, and had a GAF of 65 on his discharge.[6] (R.p. 219). With respect to his mental status, Plaintiff was diagnosed with a history of personality disorder, not otherwise specified, and a history of schizophrenia. Id.

Plaintiff also received treatment for his mental problems at the Columbia Area Mental

---

[4](...continued)
of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b) (2005).

[5]Indeed, Plaintiff conceded during his testimony at the Administrative hearing in July 2008 that he continued to abuse crack cocaine and alcohol. (R.pp. 33-34).

[6]"Clinicians use a GAF [Global Assessment of Functioning] to rate the psychological, social, and occupational functioning of a patient." Morgan v. Commissioner of Soc. Sec. Admin., 169 F.3d 595, 597 n.1 (9th Cir. 1999). A GAF score of 65 indicates that only some mild symptoms of depression or difficulty in social or occupational settings are present. Simons v. Barnhart, No. 04-5021, 2004 WL 2633448, at **2 (4th Cir. Nov. 18, 2004).



Health Center from February through September 2007, where he obtained medication and counseling. Plaintiff complained of being homeless and of having no income, while his treatment records note Plaintiff's crack cocaine dependance and that he routinely complained of hallucinations. See generally, R.pp. 232-270. However, a mental status examination performed April 16, 2007 found no evidence of hallucinations or delusions.[7] Plaintiff's memory was intact, he was able to concentrate, and he was alert and oriented. Plaintiff did, however, exhibit poor decision making. (R.p. 260).

Dr. Brown was one of the physicians Plaintiff was seeing following his release from prison. See generally, R.pp. 241, 262-270, 310-313. In a medical source statement (mental) completed on June 24, 2008 (a week before the administrative hearing), Dr. Brown opined that Plaintiff had a poor ability to maintain his personal appearance, and no ability to behave in an emotionally stable manner, relate predictably in social situations, or demonstrate reliability, noting his "long history of impulsive, unpredictable, and destructive behavior". However, he offered no opinion on Plaintiff's ability to make occupational adjustments for work, or to make performance adjustments, noting that he had not observed Plaintiff in a work setting, although Dr. Brown did state that Plaintiff "cannot and/or will not maintain employment." (R.pp. 315-317).

Finally, two state agency consultants who reviewed Plaintiff's medical records both found that Plaintiff's mental impairments resulted in only mild or moderate limitations, and that he was able to perform unskilled work. Specifically, in a report issued June 14, 2007, Dr. Edward Waller found that Plaintiff had only mild restrictions in his activities of daily living; moderate

---

[7]Plaintiff also had denied any auditory or visual hallucinations or paranoia upon his admission to the drug addiction treatment center in July 2007. (R.p. 218).



5

restrictions in maintaining social functioning and concentration, persistence, or pace; with no episodes of decompensation. (R.p. 210; see also R.pp. 214-215). Dr. Waller believed that Plaintiff was capable of maintaining a regular work schedule, although he might miss an occasional work day due to mental problems. He also believed Plaintiff was able to understand and remember short and simple instructions and was capable of performing simple tasks for over two hours without special supervision, and that he would perform better in a low stress job setting that did not require ongoing interaction with the public. (R.p. 216). In a later report issued October 10, 2007, Dr. Kevin King opined that Plaintiff was moderately restricted in not just his ability to maintain social functioning and concentration, persistence, or pace; but was also moderately restricted in his activities of daily living. Dr. King also believed Plaintiff might have one or two episodes of decompensation. (R.p. 283; see also R.pp. 287-288). Nevertheless, Dr. King also opined that Plaintiff had the capacity to understand, remember and carry out simple instructions as well as the ability to attend to simple tasks without special supervision and make simple, work related decisions. Dr. King further opined that Plaintiff would work best in a position that had limited contact with the general public and would respond best to positive supervision. (R.p. 289).

The ALJ reviewed this medical history as well as Plaintiff's subjective testimony and found that Plaintiff's mental impairment resulted in no greater than moderate restrictions of daily activity, moderate difficulties maintaining social functions, and moderate difficulties in maintaining concentration or pace. The ALJ further found, based on his review of the entire record, that Plaintiff had experienced one episode of deterioration or decompensation of extended duration. (R.p. 13). In reaching his conclusions, the ALJ noted that Plaintiff was able to frequent parties where friends provided him with drugs, that he performed odd jobs to obtain money to buy cocaine, that he mixed



with other clients at the mental health center and enjoyed such activities as watching television, shooting pool and playing cards, and that at the time of the hearing he was living with a woman and her children without any difficulty. (R.pp. 13, 33-34, 39-40, 43-48, 109). The ALJ further noted that the records from Plaintiff's treatment at the drug addiction center showed that he responded well to treatment and showed good progress with insight into how his drug abuse negatively impacted his mental health; that he was generally described as alert, oriented, and attentive with appropriate interactions with staff and peers; that he had a GAF of 65 on August 28, 2007 (indicating only mild symptoms being present); and that most of the evidence described Plaintiff as being free of hallucinations or suicidal ideation. (R.pp. 15, 219). The ALJ further found that the opinions presented by the State Agency physicians were consistent with the record and these conclusions, and were therefore entitled to significant weight. (R.p. 18). See Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986) [opinions of non-examining physicians can constitute substantial evidence to support the decision of the Commissioner].

With respect to the records and opinion of Dr. Brown, the ALJ found that Dr. Brown's comment that the Plaintiff could not or "would not" maintain employment supported a conclusion that Plaintiff's behavior was within his own control. While Dr. Brown noted Plaintiff's long history of impulsive, unpredictable, and destructive behavior, the ALJ found that this behavior was volitional and fully under Plaintiff's control, and not from uncontrollable medically determined impairments. The record reflects that Plaintiff himself has an understanding of the negative impact on his health of his continued use of cocaine, and the ALJ found that the record demonstrated that Plaintiff was capable of functioning in an appropriate manner when he chooses to do so. The ALJ noted that most of the reports from the mental health center indicate overall only mild limitations of mental function,



and that when treated Plaintiff's symptoms were quickly controlled. The ALJ therefore found Dr. Brown's notations regarding Plaintiff having "no" to "poor" ability to make personal and social adjustments to not be supported by the evidence and entitled to little weight. (R.p. 19); see Craig v. Chater, 76 F.3d 585, 591-96 (4th Cir. 1996)[A treating physician's opinion is entitled to controlling weight only if it is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record]; Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) ["[A] psychological disorder is not necessarily disabling. There must be a showing of related functional loss"].

Based on these findings, the ALJ determined that Plaintiff retained the residual functional capacity to perform light work that was limited to the performance of simple, routine tasks in a supervised environment with no required interaction with the public or team-type interaction with coworkers, with some additional limitations not related to his mental impairment. (R.p. 14). Cf. Wood v. Barnhart, No. 05-432, 2006 WL 2583097 at * 11 (D.Del. Sept. 7, 2006) [By restricting plaintiff to jobs with simple instructions, the ALJ adequately accounted for plaintiff's moderate limitation in maintaining concentration, persistence or pace]. The undersigned can find no reversible error in the ALJ's findings and conclusions. Hays, 907 F.2d at 1456 [it is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]; Bowen v. Yuckert, 482 U.S. 137, 146, n. 5 (1987)[Plaintiff has the burden to show that he has a disabling impairment]; Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987)[ALJ is entitled to observe the Plaintiff, evaluate his demeanor, and consider how the Plaintiff's testimony fits with the rest of the evidence]; Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964) [court scrutinizes the record as a whole to determine whether the conclusions reached are rational]; Foster v. Bowen, 853 F.2d 483,



489 (6th Cir. 1988) [A mental impairment diagnosis is insufficient, standing alone, to establish entitlement to benefits.]; Clarke v. Bowen, 843 F.2d 271, 272-273 (8th Cir. 1988)["The substantial evidence standard presupposes . . . a zone of choice within which the decision makers can go either way without interference by the Courts"]; Johnson v. Barnhart, 434 F.3d 650, 657 (4th Cir. 2005) [ALJ can give great weight to opinion of medical expert who has thoroughly reviewed the record]; see SSR 96-6p [Agency physicians are experts in the evaluation of medical issues for purposes of disability claims].

In response to a hypothetical which encompassed these restrictions, the Vocational Expert testified at the hearing that Plaintiff would be able to perform work with these limitations. (R.pp. 53-55); see also Smith-Felder v. Commissioner, 103 F.Supp.2d 1011, 1014 (E.D.Mich. June 26, 2000) [hypothetical question including work involving only a mild amount of stress and only "simple one, two, or three step operations" properly comports with findings of ALJ as to plaintiff's moderate limitations in concentration, social functioning, and tolerance of stress]. This hypothetical was proper based on the findings and conclusions of the ALJ, which are supported by substantial evidence in the record.

Finally, while the Commissioner did address several other issues in his brief (apparently out of an abundance of caution), the undersigned has only addressed the one issue which appears to have been raised by the Plaintiff from a fair reading of his brief, and has therefore not addressed any of these other issues. Walter v. Astrue, No. 09-1016, 2010 WL 1511666 at * 3 (D.Ariz. Apr. 15, 2010)["A reviewing federal court addresses only the issues raised by the claimant in the appeal from the ALJ's decision."] (citing Lewis v. Apfel, 236 F.3d 503, 517 n. 3 (9th Cir. 2001)).



## Conclusion

Substantial evidence is defined as "... evidence which a reasoning mind would accept as sufficient to support a particular conclusion." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). As previously noted, if the record contains substantial evidence to support the decision (i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this Court is required to uphold the decision, even should the Court disagree with the decision. Blalock, 483 F.2d at 775.

Under this standard, the record contains substantial evidence to support the conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period. Therefore, it is recommended that the decision of the Commissioner be **affirmed**.

The parties are referred to the notice page attached hereto.

Bristow Marchant
United States Magistrate Judge

June 4, 2010
Charleston, South Carolina



10

### Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).



11