IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

RECEIVED
USDC, CLERK, CHARLESTON, SC

2010 AUG 16 P 1: 30

Jessie J. Smith,

    Plaintiff,

v.

Michael J. Astrue,
Commissioner of Social Security,

    Defendant.

C.A. No.: 9:09-0351-SB-BM

**ORDER**



This is an action brought pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of the Commissioner of Social Security's ("Commissioner") final decision, which denied Jessie J. Smith's ("the Plaintiff") claim for Supplemental Security Income Benefits ("SSI"). The record includes the Report and Recommendation ("R&R") of United States Magistrate Judge Bristow Marchant, which was made in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rules 73.02(B)(2)(a). The R&R recommends that this Court affirm the Commissioner's final decision. The Plaintiff filed timely objections to the R&R, and the Defendant filed a response to the Plaintiff's objections. See 28 U.S.C. § 636(b)(1) (providing that a party may object, in writing, to a Magistrate Judge's R&R within fourteen days after being served with a copy).

## BACKGROUND

**I.**    **Procedural History**

The Plaintiff filed his claim for SSI on February 27, 2007, alleging disability beginning of August 29, 1994, due to mental health issues and various physical ailments, including Hepatitis C. The Commissioner denied his application initially and upon

reconsideration, and the Plaintiff filed a timely request for a hearing. Thus, on July 1, 2008, Administrative Law Judge ("ALJ") William F. Pope held a hearing, at which the Plaintiff and his non-attorney representative appeared.

On July 16, 2008, the ALJ issued a decision finding that Smith was not under a disability as defined in the Social Security Act. Specifically, the Commissioner found:

1. The claimant has not engaged in substantial gainful activity since February 27, 2007, the application date (20 CFR 416.920(b) and 416.971, *et seq.*).

2. The claimant has the following severe impairments: schizophrenia/bipolar disorder; decreased visual acuity; hepatitis C; leg pain associated with residuals of burn injuries; history of alcohol and crack cocaine abuse; and anti-social personality disorder (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work except that he is limited to performance of simple routine tasks in a supervised environment with no required interaction with the public or team-type interaction with co-workers. He should not be required to stoop, twist, crouch, kneel, or climb stairs or ramps more than occasionally and cannot be expected to climb ladders or scaffolds or perform work requiring fine visual acuity on a consistent basis.



5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born on July 27, 1953, and is 54 years old, which is defined as an individual "closely approaching advanced age" (20 CFR 416.963).

7. The claimant has a limited education and it able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue in this case because the

claimant's past relevant work is unskilled (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.960(c) and 416.966).

10. The claimant has not been under a disability, as defined in the Social Security Act, since February 27, 2007, the date the application was filed (20 CFR 416.920(g)).

(Tr. at 12-21.) On December 8, 2008, the Appeals Court denied the Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. The Plaintiff filed the instant action on February 11, 2009.

## II. Medical Evidence

The Plaintiff, who was 54 years old at the time of the ALJ's decision, has a seventh grade education with no past relevant work experience since February of 2007. The record indicates that the Plaintiff has been incarcerated several times and that he has a long history of substance-abuse problems.



During February of 2007, the Plaintiff complained of chest pain; however, physical examination results were benign, and a cardiac test indicated no evidence of active ischemia.

Upon the Plaintiff's release from prison in February 2007, he resumed his use of alcohol and crack cocaine and was admitted to a drug addiction treatment center. Diagnoses included crack cocaine dependence and alcohol abuse, history of a personality disorder, hypertension, and chronic skin ulcer of the left lower extremity. Upon discharge, the Plaintiff was described as psychiatrically and medically stable without evidence of disordered thinking and his global assessment of functioning ("GAF") was 65, indicative of

only some mild mental symptoms.

The Plaintiff also received treatment for his mental problems at the Columbia Area Mental Health Center from February through September 2007. Treatment records indicate that he was prescribed medication and underwent counseling.

Bo Brown, M.D., treated the Plaintiff following his release from prison, and in a medical source statement (mental) completed on June 24, 2008, a week before the hearing, Dr. Brown opined that the Plaintiff had a poor ability to maintain his personal appearance and no ability to behave in an emotionally stable manner. Dr. Brown also opined that the Plaintiff had no ability to relate predictably in social situations or to demonstrate reliability. Dr. Brown noted that he had not observed the Plaintiff in a work setting but that the Plaintiff "cannot/+or will not maintain employment." (Tr. at 315 (emphasis in original).) Dr. Brown noted that the Plaintiff "has a long history of impulsive, unpredictable, and destructive behavior." (Tr. at 316.)

Edward Waller, Ph.D., and Kevin King, Ph.D., state agency consultants, reviewed the Plaintiff's records and completed Psychiatric Review Technique forms and Mental Residual Functional Capacity Forms. Drs. Waller and King determined that the Plaintiff's mental impairments resulted in only mild or moderate limitations and that he was able to perform unskilled work.

On December 5, 2007, Mitchell Hegquist, M.D., conducted a consultative physical examination of the Plaintiff at the request of the state agency. His examination revealed that the Plaintiff's grip strength was normal and that he was able to perform fine and gross manipulations with his hands. His examination also revealed that the Plaintiff had no muscle spasms or atrophy, good range of motion and strength of the upper extremities,

4

and the ability to squat and heel-toe walk.

Elva Stinson, M.D., a state agency medical consultant, reviewed the Plaintiff's records and completed a Physical Residual Functional Capacity Assessment, determining that the Plaintiff was capable of performing the exertional requirements of light work.

## II.    Administrative Hearing Testimony

The Plaintiff testified at the hearing that he continued to abuse crack cocaine and drink alcohol. He stated that if he stands on his left leg for too long, it swells and breaks into sores that take six or seven months to heal as a result of the past burn injuries.

In response to the hypothetical question posed by the ALJ, vocational expert William Stewart, Ph.D., testified that a person of the Plaintiff's age, education, and residual functional capacity ("RFC") could perform jobs that exist in significant numbers in the national economy.

## STANDARD OF REVIEW

### I.    The Magistrate Judge's R&R

The Magistrate Judge makes only a recommendation to the Court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the Court. Mathews v. Weber, 423 U.S. 261, 269 (1976). The Court reviews de novo those portions of the R&R to which a specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions.

### II.   Judicial Review of a Final Decision

The role of the federal judiciary in the administrative scheme as established by the

5

Social Security Act is a limited one. Section 205(g) of the Act provides that, "[t]he findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Consequently, judicial review . . . of a final decision regarding disability benefits is limited to determining whether the findings are supported by substantial evidence and whether the correct law was applied." Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). "Substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). In assessing whether there is substantial evidence, the reviewing court should not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of" the agency. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (alteration in original).

## DISCUSSION

### I. The Commissioner's Final Decision

The Commissioner is charged with determining the existence of a disability. The Social Security Act, 42 U.S.C. §§ 301-1399, defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). This determination involves the following five-step inquiry:

> [The first step is] whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App. I. If so, the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant form returning to past work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the answer is in the affirmative, the final consideration looks to whether the impairment precludes the claimant from performing other work.

Mastro, 270 F.3d at 177 (citing 20 C.F.R. § 416.920).

If the claimant fails to establish any of the first four steps, review does not proceed to the next step. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993). The burden of production and proof remains with the claimant through the fourth step. However, if the claimant successfully reaches step five, then the burden shifts to the Commissioner to provide evidence of a significant number of jobs in the national economy that the claimant could perform, considering the claimant's medical condition, functional limitations, age, education, and work experience. Walls, 296 F.3d at 290.

Here, the ALJ determined that the Plaintiff had not engaged in substantial gainful activity since the application date, February 27, 2007. At the second step, the ALJ found that the Plaintiff established "severe" impairments (listed as schizophrenia/bipolar disorder, decreased visual acuity, hepatitis C, leg pain associated with residuals of burn injuries, history of alcohol and crack cocaine abuse, and anti-social personality disorder). Third, the ALJ found that these medically determinable impairments did not meet or medically equal any of the criteria listed in 20 C.F.R. §§ 404.1520(c) and 416.920(b). The ALJ then determined that the Plaintiff's allegations and testimony regarding his limitations were not

7

totally credible in view of the record and found that the Plaintiff retained the RFC to perform light work limited to "simple routine tasks in a supervised environment with no required interaction with the public or team-type interactions with co-workers." (Tr. at 14.) Further, the ALJ determined that the Plaintiff "should not be required to stoop, twist, crouch, kneel, or climb stairs or ramps more than occasionally and cannot be expected to climb ladders or scaffolds or perform work requiring fine visual acuity on a consistent basis." (Id.) At step four, the ALJ found that the Plaintiff's RFC did preclude him from returning to his past relevant work as a laborer and handyman. However, at the fifth step, the ALJ found that the Plaintiff's RFC permitted him to perform a range of unskilled light work, including that of service worker and hand packer/sorter/trimmer. (Tr. at 21.) The ALJ thereby concluded that the Plaintiff was not under a "disability" as defined in the Social Security Act. (Id.)

## II.     The Plaintiff's Brief

The following claims can be discerned from a very liberal interpretation of the Plaintiff's short, three-page brief: (1) the Appeals Council failed to explain why it adopted the ALJ's decision; (2) the ALJ erred in failing to admit that the claimant's mental functioning is impaired; (3) the ALJ erred in failing to find that the Plaintiff was illiterate; and (4) the ALJ erred by failing to take Dr. Brown's statements as evidence of the Plaintiff's inability to work. The Plaintiff points to portions of the record but offers no legal support for his claims.

## III.    The Defendant's Brief

In his brief, the Defendant argues that substantial evidence supports the Commissioner's final decision. First, in response to Plaintiff's argument that the Appeals

Council did not articulate a reason for refusing review, the Defendant asserts that the ALJ's decision is the "final decision" of the Commissioner for purposes of this review. The Defendant acknowledges that some review of the Appeals Council decision may be appropriate when a claimant presented new evidence to the Appeals Council but notes that the Plaintiff did not offer any new evidence before the Appeals Council here.

Next, responding to the contention that the ALJ did not consider the Plaintiff's impaired mental functioning, the Defendant points out that the ALJ included schizophrenia/bipolar disorder as severe impairments and determined that the Plaintiff's mental problems limited his ability to do basic mental work activities. Moreover, the Defendant points out that these impairments motivated the ALJ's restriction of work to jobs with no interaction with the public or team-type interactions with co-workers. The Defendant also argues that the ALJ properly considered the Plaintiff's physical impairments by limiting the Plaintiff to light work with further limitations on particular postures such as stooping and crouching. The Defendant argues that the hypertension was a non-severe impairment because the Plaintiff presented no objective medical evidence to suggest that the hypertension would limit his ability to do basic work activities.

Addressing the Plaintiff's claim that he cannot work due to illiteracy, the Defendant points out that illiteracy in itself does not automatically preclude work. Furthermore, the Defendant refers to the evidence in the record (as also outlined by the ALJ) that indicates that the Plaintiff was not illiterate, but rather, possessed a limited education. For instance, the record indicates that: the Plaintiff finished the seventh grade; that he could read at a third grade level; that he had some past skilled and semi-skilled work experiences demonstrating a limited education; and that he had completed written assignments.

9

Finally, regarding Dr. Brown's opinion, the Defendant argues that the treating physician rule does not require an ALJ to give controlling weight to a treating physician's opinion when that opinion is unsupported by the record, which is what the ALJ found here. The Defendant points out that Dr. Brown's report did not contain any clinical or diagnostic findings to support the limitations and that his statement that the Plaintiff "cannot/+or will not maintain employment" appears to be more of a statement about the Plaintiff's volitional behavior rather than his inability to work due to a medically determinable impairment. The Defendant contends, as the ALJ found, that this comment only reflects uncertainty and not a conclusion of disability. Further, the Defendant argues that Drs. Waller, King, and Stinson provide substantial evidence to support the ALJ's conclusion and his treatment of Dr. Brown's opinion.

### IV. The Magistrate Judge's R&R

In the R&R, the Magistrate Judge found that the ALJ's decision was supported by substantial evidence and recommended that the Court affirm the decision. The Magistrate Judge agreed with the Defendant's arguments regarding Dr. Brown's assessment and found that substantial evidence supported the ALJ's decision to give little weight to Dr. Brown's opinion. The Magistrate Judge declined to address other issues presented by the Defendant, stating that they were not "raised by the Plaintiff from a fair reading of his brief." (Entry at 9.)

### V. The Plaintiff's Objections to the R&R

In his objections to the R&R, the Plaintiff rehashes his arguments: he again asserts that the ALJ should have given controlling weight to Dr. Brown's opinion, as the treating

physician, rather than to the agency medical consultants' opinions, as they did not treat the Plaintiff directly. Next, the Plaintiff repeats his argument that the ALJ did not give adequate weight to his limited education and third grade reading level. The Plaintiff also appears to argue that the Magistrate Judge and the ALJ erred in failing to admit that the Plaintiff's ailments, when taken together, would prevent him from working.

## VI. The Court's Decision

After careful review, the Court has no difficulty in determining that the ALJ's decision is supported by substantial evidence. Accordingly, the Court adopts the R&R and overrules the Plaintiff's objections, as indicated below.

First, the Court overrules the Plaintiff's objection that the ALJ (and the Magistrate Judge) erred by failing to give the opinion of treating physician Dr. Brown controlling weight over the opinions of other experts who had limited or no encounters with the Plaintiff. A treating physician's opinion will be given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case." 20 C.F.R. § 404.1527(d)(2). Among other things, the ALJ must consider the nature of the treatment relationship, the extent of examinations and testing, the relevant evidence in support of the opinion, and the extent to which the opinion is consistent with other evidence. See 20 C.F.R. § 404.1527(d)(2-4). Furthermore, a physician's conclusory statement that a patient is not able to work will be considered only to the extent that it is supported by diagnostic evidence:

> We are responsible for making the determination or decision about whether you meet the statutory definition of disability. In so doing, we review all of the medical findings and other evidence that support a medical source's statement that you are disabled. A statement by a medical source that you are "disabled" or "unable to work" does not mean that we will determine that

11

you are disabled.

20 C.F.R. § 404.1527(e)(1). After determining the proper weight to give a treating physician's opinion, the ALJ must explain the reasons for that determination. 20 C.F.R. § 404.1527(d)(2).

Here, the Court finds that the ALJ's treatment of Dr. Brown's testimony is consistent with the law and supported by substantial evidence. As set forth above, Dr. Brown had not seen the Plaintiff in a work environment, and he did not support his comments with any diagnostic tests or medical evidence. Even assuming that Dr. Brown intended to opine that the Plaintiff was disabled, which is not clear from his report, whether the Plaintiff can or cannot work is a legal conclusion reserved for the ALJ's determination based on a review of all of the evidence in the record. And here, the ALJ explained in great detail his finding that Dr. Brown's opinion was unsupported by the evidence. As the ALJ noted:

> While it is true that the claimant has a history of impulsive, unpredictable, and destructive behavior with the evidence indicating that he has been in prison for much of his adult life for infractions involving rape, burglary, grand larceny, and assaulting an officer, it appears that the claimant's behavior is volitional and fully under his control. Progress notes indicate that he alleges hearing voices telling him to kill himself and somewhat vague auditory visions, but that he does not pay much attention to either the auditory or visual hallucinations. He is consistently described as pleasant, cooperative, and attentive. He voiced understanding of the negative impact on his health by his continuing use of cocaine and despite being free of cocaine and alcohol use during prolonged prison stays; he has elected to resume use of illicit substances and alcohol upon release from prison and discharge from treatment at Morris Village. Despite his ongoing use of cocaine, marijuana, and alcohol, he demonstrates that he is capable of functioning in an appropriate manner, when he chooses to do so.
>
> Dr. Brown's opinion regarding limitations in making personal-social adjustments appears to be based on the claimant's history of volitional behaviors and not on effects from uncontrollable medically determined impairments. His additional comments that the claimant could not or would not maintain employment further bolsters the conclusion that Dr. Brown did

12

not consider the claimant to be medically disabled, but instead suspected
that his behavior was within his own control. . . .

(Tr. at 19.) The ALJ considered all of the medical and factual evidence in the record and outlined it in great detail in his report. And ultimately, after consideration of the Plaintiff's objection and the record, the Court finds that substantial evidence supports the ALJ's treatment of Dr. Brown's opinion.

In his objections, the Plaintiff next argues that the ALJ "does not admit that the claimant's mental functioning is impaired." (Entry 10 at 3.) The Court finds this objection to be without merit as the ALJ specifically listed schizophrenia/bipolar disorder, drug addition, and anti-social personality disorder as among the Plaintiff's severe impairments and considered them in limiting the Plaintiff to jobs with minimal or no social interaction. Moreover, the ALJ discussed the Plaintiff's mental medical history at length and concluded based on the evidence that the Plaintiff does not have mental impairments that "significantly affect[ ] his ability to maintain social relationships or perform activities of daily living." (Tr. at 16.) Because the job of the reviewing court is not to re-weigh conflicting evidence or substitute its view for that of the agency, and because the record contains substantial evidence to support the ALJ's decision, the Court finds no reversible error. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001).



Next, the Court overrules the Plaintiff's objection that the ALJ "fail[ed] to give adequate weight" to the Plaintiff's limited education. In addition to considering a claimant's formal schooling, 20 C.F.R. § 416.964 provides that intellectual abilities can be inferred from "[p]ast work experience and the kinds of responsibilities [a claimant] had when [he was] working." Here, in reaching his determination, the ALJ considered the Plaintiff's

13

limited formal education in addition to his intellectual performance during inpatient treatments and his prior skilled and semi-skilled work experience. (Tr. at 20.) As the weighing of these individual factors is the job of the ALJ and he adequately explained his decision, the Court finds no error with the ALJ's treatment of the Plaintiff's literacy.

Finally, the Plaintiff broadly objects to Magistrate Judge's and the ALJ's failure to admit that the "ailments, taken together, prevent the claimant from working." (Entry 10 at 2.) Even liberally interpreting the Plaintiff's objection as an argument that the ALJ did not adequately explain the combined effects of the impairments, the Court finds the objection to be without merit. Again, the Court is charged only with determining whether the ALJ's decisions are consistent with the law and supported by substantial evidence. The Fourth Circuit requires that the ALJ adequately consider and explain the cumulative effect of a claimant's impairments. Walker v. Bowen, 889 F.2d 47, 49-50 (4th Cir. 1989) ("Congress explicitly requires that 'the combined effect of all the individual's impairments' be considered, 'without regard to whether such impairment if considered separately' would be sufficiently severe.") (quoting 42 U.S.C. § 423(d)(2)(c) and Hines v. Bowen, 872 F.2d 56, 59 (4th Cir. 1989)). Nevertheless, an explanation of combined effects is not necessary if a condition "can be reasonably controlled by medication or treatment" and "is not disabling." Green v. Chater, 64 F.3d 657 (4th Cir. 1995) (quoting Gross v. Heckler, 785 F.2d 1163 (4th Cir.1986)). For such conditions, the ALJ can simply list "the alleged impairments, and discuss[] why he found [the] alleged symptoms were not credible." Id.

Here, the ALJ adequately considered and explained the combined effects of the Plaintiff's impairments. For example, the ALJ weighed the evidence and determined that "the exacerbation of [Plaintiff's] mental condition by his continuing polysubstance abuse"

14

would not limit his "ability to perform basic work-related activities." (Tr. at 16.) The ALJ considered the combined effect of the Plaintiff's skin ulceration and hepatitis C in determining that his work-related activities should be restricted to "light exertion with some postural restrictions." (Id. at 17). Regarding the Plaintiff's vision, the ALJ found that there was no "evidence of underlying eye disease that would preclude correction of decreased visual acuity." (Id.) Because the Plaintiff's poor vision can reasonably be treated, the ALJ was not obligated to consider this impairment in combination with any other. Likewise, the ALJ concluded that the Plaintiff's alleged cardiac and respiratory abnormalities were either controllable or within normal limits. (Id.) For each of the Plaintiff's medical conditions, therefore, the ALJ either adequately explained the combined effect or detailed his decision that the condition is treatable. Thus, the Court finds no error in the ALJ's treatment of the combined effects of the Plaintiff's impairments.

## CONCLUSION

After a careful examination of the record, the Court finds that substantial evidence supports the Commissioner's final decision, and therefore, it is hereby

**ORDERED** that the R&R (Entry 9) is adopted, the Plaintiff's objections (Entry 10) are overruled, and the Commissioner's denial of benefits is affirmed under sentence four of 42 U.S.C. §§ 405(g) and 1383(c).

**AND IT IS SO ORDERED.**

The Honorable Sol Blatt, Jr.
Senior United States District Judge

August 13, 2010
Charleston, South Carolina

15